IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JAMMIE LOPEZ, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-15-1073 |
| CITY OF GAITHERSBURG, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Jammie Lopez ("Plaintiff" or "Lopez") has brought this action against Defendants City of Gaithersburg (the "City") and the City's Chief of Police, Mark Sroka, ("Chief Sroka") (collectively "Defendants")[1] alleging violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA"). *See generally* Compl., ECF No. 1. Specifically, Plaintiff alleges that Defendants "[i]nterfer[ed] with [her] [e]xercise of FMLA [r]ights" (Count One) and "retaliate[ed] against [her] for exercising [her] rights under the FMLA" (Count Two). *Id.* at 6-8. Currently pending before this Court are Plaintiff's Motion for Summary Judgment as to Liability on the Complaint (ECF No. 23) and Defendants' Cross Motion for Summary Judgment (ECF No. 28). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (2016). For the reasons stated herein, Plaintiff's Motion for Summary Judgment (ECF No. 23) is DENIED, and

---

[1] Plaintiff initially named Alfred Anthony Tomasello, the City's "City Manager," as an additional defendant. *See* Compl., p. 1-2, ECF No. 1. However, this Court has subsequently dismissed Tomasello from this case by stipulation of the parties. *See* Marginal Order, ECF No. 19.

Defendants' Cross Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART.  Specifically, Judgment is entered for the Defendants on Count One of the Complaint, Plaintiff's FMLA interference claim, but a genuine issue of material fact remains as to liability on Count Two of the Complaint, Plaintiff's FMLA retaliation claim.  Accordingly, the Defendants' Cross Motion for Summary Judgment is DENIED as to Count Two, and this case will proceed to trial on that FMLA retaliation claim.

## BACKGROUND

Plaintiff Jammie Lopez ("Plaintiff" or "Lopez") was employed by the City of Gaithersburg, Maryland ("Defendant" or the "City") as a full-time police officer.  *See* Compl. at ¶¶ 1-3, ECF No. 1.  In 2014, she became romantically involved with her co-worker, Patrick Word ("Word").  *Id.* at ¶ 18.  In April of 2014, Lopez and Word disclosed their relationship to the City Police Department's command staff.  *Id.* at ¶ 19.  Lopez's supervisors "disapproved of her relationship to such an extent" that they "threatened to discipline" Lopez, although at that time the City "had no prohibitions or regulations regarding romantic involvements between employees."  *Id.* at ¶¶ 20-21.  However, Lopez's supervisors "did change [her] schedule so that [she] did not encounter Mr. Word during working hours."  *Id.* at ¶ 20.

Lopez married Word in June of 2014.  *Id.* at ¶ 22.  Shortly thereafter, she learned that she was pregnant.  *Id.* at ¶ 23.  Due to her pregnancy, Lopez was placed on light duty status on August 18, 2014.  *See* Personnel Order #2014-30, ECF No. 28-7.  "In October of 2014, [Lopez] was diagnosed with gestational diabetes and was medically certified as having a " 'high risk pregnancy.' "  Compl. at ¶ 24, ECF No. 1.

On November 25, 2014, Lopez notified the City that she planned to request leave from work for the birth of her child, pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA")[2]. *See* Lopez Dep., p. 62, ECF No. 28-6. Around this time, Lopez had several conversations with Sarah Fleming ("Fleming"), a Human Resources Generalist for the City. *Id.* at 64. Fleming supplied Lopez with the forms that had to be completed in order to process her leave request, including a Family or Medical Leave Request Form ("Leave Request Form") and a Certification of Health Care Provider for Employee's Serious Health Condition ("Certification")[3]. *Id.* at 65. Additionally, Lopez claims that she and Fleming "discussed not starting [Lopez's leave] until [she] had used all of [her] leave, annual, sick, donated." *Id.* According to Lopez, Fleming "said that that was fine" and explained that Lopez could "take advance leave . . . put in for short-term disability . . . [or] ask for leave without pay" if she ever exhausted her [FMLA] leave. *Id.* at 66.

Subsequently, Lopez returned the Leave Request Form to Fleming, requesting leave beginning on January 20, 2015 and ending on April 19, 2015 due to "[t]he birth of [her] child." *See* Family or Medical Leave Request Form, ECF No. 28-9. On that form, Lopez indicated that her husband, Patrick Word ("Word"), a fellow City employee, would also take FMLA leave due to the birth of their child. *Id.* However, Lopez did not initially return the

---

[2] The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA") provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave [480 hours] during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter . . . [or] [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The parties do not dispute that Lopez was eligible for FMLA leave: she was a local government employee who had worked for that employer "for at least 12 months" and "for at least 1,250 hours of service . . . during the previous 12-month period." *See* Compl. at ¶¶ 15-17, ECF No. 1; 29 U.S.C. § 2611(2)(A).

[3] The City provides comprehensive written guidance to all of its employees concerning their rights and obligations under the Family and Medical Leave Act. *See* City of Gaithersburg Personnel Rules and Regulations Manual, Section 700: Leave, Attendance & Holidays, ECF No. 28-3.

Certification.   On December 15, 2014, Lopez informed her supervisors, Sergeant Ray Campbell ("Sergeant Campbell") and Lieutenant Curtis Pettaway ("Lieutenant Pettaway"), that her pregnancy had been classified as "high risk" and that a perinatal specialist had "recommended [she] go on bed rest immediately."   December 15, 2014 Lopez Email, ECF No. 28-10.   Accordingly, Lopez stated that she "[would] be going on FMLA a lot sooner than we anticipated."  *Id.*  Fleming responded as follows:

> "Please let your doctors know we HAVE to have the certification prior to your going out.  Please have it updated with this new info…. If possible could you have the specialist complete the certification for the bed rest?  Especially being that you could be going out for the bed rest-not just for the leave for the birth."

December 15, 2014 Fleming Email, ECF No. 28-11.  Lopez's last physical day of work was December 17, 2014.  *See* Time Detail, p. 19, ECF No. 28-8.

On December 18, 2014, Lopez sent Fleming and Kim Yocklin ("Yocklin"), the City's Director of Human Resources, a note from her perinatal specialist, indicating that she had been placed on bed rest as of that day.  *See* December 18, 2014 Lopez Email, ECF No. 28-12; December 18, 2014 Dr. Jonathan Hodor Note, ECF No. 28-13.  Lopez also indicated that she was "waiting for the doctor[']s office to call [her] so [she] [could] pick up the rest of the paperwork they need[ed] to fill out" and that she would "drop it off" "[o]nce [she] . . . received it."  *Id.*  That same day, Yocklin reminded Lopez that "in order for this to be FMLA, we need to have the [Certification] completed by your physician."  December 18, 2014 Yocklin Email, ECF No. 28-14.

Via email dated December 23, 2014, Fleming again advised Lopez that "you cannot begin utilizing FMLA until we are in receipt of the Healthcare certification and approve the

leave." December 23, 2014 Fleming Email, ECF No. 28-15. Four days later, Lopez replied that she "[g]ot all the paperwork" and that it would be "placed in an envelope for Sarah [Fleming] to receive on Monday." December 27, 2014 Lopez Email, ECF No. 28-16. Lopez then submitted a completed Certificate to the City's Human Resources Office. *See* Certificate, ECF No. 28-17. The Certificate, signed by Lopez's doctor, indicated that her estimated date of delivery was January 21, 2015 and that she would be incapacitated for six weeks following her delivery, running from January 21, 2015 to March 4, 2015. *Id.* at 2-3.

However, in an email dated December 31, 2014, Fleming informed Lopez that although "the certifications provided for [her] FMLA [were] sufficient for [her] leave after the birth of the child," Fleming needed "more documentation/clarification for" the [pre-delivery] leave Lopez was currently on. December 31, 2014 Fleming Email, ECF No. 28-18. The email stated the following:

> The doctors slip to have you on bed rest; could you please have the doctor include the duration time of the bed rest? If it states the time frame-it is not legible and it is written in doctor's shorthand. Basically, it should read 'on bed rest from the date of this slip (which is included) through the birth of the child'. . . Additionally, I need to know if you are intending to use FMLA to cover this time. Please let me know if you have any questions." *Id.*

On January 5, 2015, Doctor Hodor, Lopez's doctor, revised his bed rest note to indicate that Lopez was to remain off work from December 18, 2014 until post-delivery. *See* January 5, 2015 Bed Rest Note, ECF No. 28-19. However, Defendants claim that they never received "a response from [Lopez] regarding what date she wanted her FMLA leave to commence – i.e., whether [Lopez's] FMLA leave was to commence on December 18, 201[4], the date she began bed rest or on January 21, 2015, her child's estimated due date. *See* Mem. Supp. Defs.' Mot., p. 7, ECF No. 28-1. Ultimately, Lopez's pre-delivery "bed rest" leave was

labeled as "sick leave," "annual leave," or "personal leave," as opposed to "FMLA" leave, in the City's records. [4]  *See* Time Detail, p. 19, ECF No. 28-8.

Also on January 5, 2015, Word informed his supervisor and Fleming that Lopez's doctors had decided to induce labor on January 15th, a week earlier than expected, due to Lopez's high risk pregnancy.  *See* January 5, 2015 Word Email, ECF No. 28-20.  Word indicated that if Lopez did not go into labor before then, he would "adjust [his] FMLA dates and return to work on February 5." *Id.*  Lopez gave birth on January 16, 2015.  Compl. at ¶ 30, ECF No. 1.

Via email dated March 13, 2015, Lopez informed Lieutenant Pettaway that "[d]ue to follow up appointments and spring break for the kids, I will be returning on April 6."  March 13, 2015 Lopez Email, ECF No. 28-21.  "As [they] had previously discussed on the phone," Lopez indicated that "[she] [would] be returning to work on light duty and [would] provide

---

[4] Defendants contend that an administrative error occurred in their record-keeping, that all of Lopez's leave was "FMLA" leave and, accordingly, that it counts against the 12 weeks of leave she is guaranteed under the FMLA.  Lopez does not dispute that her medically necessary pre-delivery leave *qualified* as FMLA leave, but claims she was not on notice that her pre-delivery leave was actually *designated* as FMLA leave and charged against her 12-week allotment because Defendants had an "active policy" in place at that time permitting employees to exhaust "other leave" before taking FMLA leave.  A genuine issue of material fact remains as to whether or not this was Defendants' "active policy" and, if so, whether Lopez has been denied the benefit of that policy.  Accordingly, there remains a genuine issue of material fact as to whether she was on notice that her pre-delivery leave would be counted as FMLA leave.  As explained *infra*, this factual question creates a genuine issue of material fact as to liability on Plaintiff's FMLA retaliation claim (Count Two) because an employer's failure to uniformly apply its policy creates a triable issue of fact with respect to an FMLA retaliation claim.  However, summary judgment will be entered for Defendants on Plaintiff's FMLA interference claim (Count One) because Plaintiff, regardless of whether she was actually on notice, cannot demonstrate that she was *prejudiced* by Defendants' alleged failure to timely notify her as to how they were counting her FMLA leave.  It is an employer's responsibility to designate leave as FMLA leave, and Defendants have now designated Plaintiff's pre-delivery leave as FMLA leave.  Even if an employer fails to timely notify its employee that her FMLA-qualifying leave will be designated as FMLA leave (*e.g.*, a retroactive designation), an employee cannot prevail on an FMLA interference claim against that employer unless she can demonstrate that she was *prejudiced* by the employer's alleged failure to provide notice.  Here, Plaintiff was not prejudiced because, regardless of whatever notice she received as to when her FMLA leave began, she was medically unable to return to work within 12 weeks of that time. *See* discussion *infra*.

[him] with a doctors note." *Id.* Lopez estimated that she would be "on light duty approximately 2-4 weeks." *Id.* On March 16, 2015, Fleming sent Lopez an update on her FMLA leave status and informed her that she would "max out of [her] hours on March 25, 2015." *See* March 16, 2015 Fleming Email, ECF No. 28-22. Fleming indicated that Lopez had used 88 hours of FMLA leave in January, 152 hours in February, and was projected to use 136 hours of FMLA leave in March, for a total of 376 FMLA leave hours. *Id.* She then combined this number with the 100 hours of FMLA time Word had used, for a total of 476 hours. *Id.* Fleming explained that Lopez would hit a "combined 476 hours on March 24, 2015; which [would] leave 4 hours for March 25, 2015."[5] *Id.*

On March 17, 2015, Lopez send Lieutenant Pettaway a "Request for Leave without Pay . . . for the period of March 26 – April 5, 2015." March 17, 2015 Lopez Email, ECF No. 28-23. In that memo, Lopez indicated that her "current FMLA leave expire[d] on March 25 as well as all of [her] leave and donated leave." *Id.* According to Lopez, she was making the request "due to continuing post-partum medical care." *Id.* She further stated that "[o]nce cleared to return, I have requested a light duty status until I am fully capable of returning to my patrol duties in uniform." *Id.* On Mach 18, 2015, Lieutenant Pettaway sent Fleming a doctor's note regarding Lopez's return to light duty on April 6, 2015. *See* March 18, 2015 Pettaway Email, ECF No. 28-24. The note, signed by Khalilah Jefferson, CRNP, stated that Lopez would be able to return to work on April 6, 2015 and could resume regular work activity after four weeks. Jefferson Note, ECF No. 28-25.

---

[5] Under federal regulations, "[s]pouses who are eligible for FMLA leave and are employed by the same covered employer *may be limited to a combined total of 12 weeks of leave* during any 12–month period if the leave is taken for birth of the employee's son or daughter . . . ." 29 C.F.R. § 825.120 (emphasis added).

Via Letter dated March 19, 2015, the Defendant Mark P. Sroka, Chief of Police of the City's Police Department, ("Chief Sroka") informed Lopez that her FMLA leave would "be exhausted on March 25, 2015." March 19, 2015 Chief Sroka Letter, ECF No. 28-26. Chief Sroka acknowledged that Lopez had requested unpaid leave through April 6, 2015 and that her request would be sent to the City Manager for approval, pursuant to the City's Personnel Rules and Regulations.[6]  *Id.*  "In order for the Department to consider and make a recommendation on [Lopez's] request," he asked Lopez "to provide medical certification that clarifies the March 18, 2015 medical documentation and specifically addresses (i) your inability to return to work as of March 26, 2015, and (ii) that you will be able to return to work within 30 days of the expiration of family or medical leave and to perform the essential functions of your position."  *Id.*  Chief Sroka indicated that he would "need additional medical documentation to delineate what duties [Lopez] would be able to perform upon [her] return to work" if the City Manager approved her request.  *Id.*  Chief Sroka requested that Lopez "provide this information . . . no later than 5 p.m. on Monday, March 23, 2015, so that the Department may consider [her] request prior to the expiration of [her] job-protected leave entitlement."  *Id.*

Chief Sroka sent Lopez a follow-up letter, dated March 24, 2015, indicating that he could not recommend to the City Manager that her request for additional leave be granted. March 24, 2015 Chief Sroka Letter, ECF No. 28-28. Chief Sroka indicated that he had conducted a careful review of Lopez's submitted documents, including "medical notes,"

---

[6] Section 713.2(f) of the City's Personnel Rules & Regulations provides that "[t]he City Manager may approve holding the position open for the employee for a period not to exceed 30 days" and that the Police Department "may recommend that it is in the best interest of the City" to do so.

"emails sent from [Lopez] to Lieutenant [] Pettaway," and "a memorandum prepared by [Lieutenant Pettaway] concerning this matter." *Id.* He explained his decision as follows:

> Among other concerns, you have provided inconsistent return dates. By an earlier email exchange, you indicated you would return on March 23. After that, on March 18, you provided the statement that you could return on April 6. Then on March 20, in conversation with Kim Yocklin, you indicated you would return a week before that, on or around March 30. And then on March 23, you provided a medical statement indicating you "will" return on April 6. Thus, I cannot recommend that your job position be held open beyond the FMLA entitlement period, and if you cannot return to work by March 26, 2015, you will be terminated. *Id.*

Chief Sroka asked Lopez to notify Yocklin or himself if she did not intend to return to work on March 26, 2015. *Id.* Additionally, he advised her that "if you intend to return to work at that time, Section 713.2(m)(1) of the Personnel Rules and Regulations Manual requires that you first provide a written certification from your personal health care provider that you are fit to return to work at that time. Without that certification, the Personnel Rules and Regulations do not permit me to allow you to return to work. That certification must be provided by no later than noon on March 26, 2015 if you intend to return to work that evening." *Id.* With respect to Lopez's request for light duty work, Chief Sroka indicated that any reasonable accommodation would be considered upon her timely return to work, pursuant to Sections 713.2(f) and 712(m)(2) of the Personnel Rules and Regulations Manual. *Id.* Furthermore, "in order to determine whether there are any light duties that [Lopez could perform," he stated that he "would need additional medical information as to the specific tasks [she could] perform." *Id.* Chief Sroka stated that he had "not received such information." *Id.* He claimed that the medical statements Lopez had provided stated "work restrictions," but "[did] not indicate what tasks [she could] perform." *Id.*

9

Lopez sent an email to Yocklin in response to Chief Sroka's letter. *See* Lopez Email, ECF No. 28-29. Again, she indicated that she was "aware . . . [her] FMLA runs out on March 26," but sought an "additional 7 days . . . based on the expert medical opinion of [her] physician and providers." *Id.* She objected to the part of Chief Sroka's letter "where [he] states that he would 'consider' light duty." *Id.* According to Lopez, "he ha[d] never argued this point with other employees" during her tenure with the department. *Id.* Lopez questioned why she was being treated differently. *Id.* Additionally, she argued that he had received plenty of medical documentation outlining her job restrictions from which one could easily determine that she can do anything else, "including the light duty assignment [she] had during [her] pregnancy when assigned to the Administrative Bureau." *Id.* She objected that "Chief Sroka [knew] all of these duties because a list of all [she] was doing was emailed to him last fall by [Lieutenant] Pettaway." *Id.* Lopez further challenged the standard by which Chief Sroka concluded it was not in the City's best interest to give her seven days of leave without pay and to hold her job open. *Id.* "The only thing he lists are inconsistent return dates," Lopez argued, "in which he stated that you and I discussed my return date on March 20th that I would be returning March 30th." *Id.* "[W]hen did we have this conversation?," she asked. *Id.*

The next day, City Manager Tony Tomasello sent Lopez a letter terminating her employment, "based on the expiration of [her] Family Medical Leave Act (FMLA) leave entitlement and failure to provide medical certification that [she was] fit to return to work as of March 26, 2015." March 26, 2015 Tomasello Letter, ECF No. 28-30. Tomasello indicated that he "ha[d] reviewed all of the documentation involved in this matter prior to a

final decision being made by Chief Sroka," including Lopez's response and "other materials related to this situation" and "support[ed] the actions taken by Chief Sroka."   *Id.* Subsequently, Lopez brought this action, pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA"), alleging that Defendants both "[i]nterfer[ed] with [her] [e]xercise of FMLA [r]ights" (Count One) and "retaliate[ed] against [her] for exercising [her] rights under the FMLA" (Count Two).   *See* Compl., p. 6-8, ECF No. 1.   Plaintiff has subsequently filed a Motion for Summary Judgment as to Liability on the Complaint (ECF No. 23), and Defendants have filed a Cross Motion for Summary Judgment (ECF No. 28).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.   When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.   *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.   *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).   Where, as here, both parties

have filed motions for summary judgment, this Court "must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond*, 475 F.3d 633, 637-38 (4th Cir. 2007) (internal quotation marks omitted).  This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, ("FMLA") provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave [480 hours] during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter . . . [or] [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002) ("Qualifying employees are guaranteed 12 weeks of unpaid leave each year by the [FMLA]," although the FMLA "encourages businesses to adopt more generous polices, and many employers have done so."). Eligible employees "have a right 'to be restored by the employer to the position of employment held by the employee when the leave commenced' or to 'an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.' " *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)(A)-(B)).

"These substantive rights, and their accompanying protections . . . are *prescriptive*, 'set[ting] substantive floors for conduct by employers, and creating entitlements for employees.' " *Id.* (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). "Claims of alleged violations of these prescriptive rights—known as 'interference' or 'entitlement' claims—arise under 29 U.S.C. § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.' " *Id.* Additionally, the FMLA "contains *proscriptive* provisions that protect employees from discrimination or retaliation for

exercising their substantive rights under the FMLA." *Id.* (citing *Hodgens*, 144 F.3d at 159–60). "Known as 'retaliation' or 'discrimination' claims, causes of action alleging violations of these proscriptive rights arise under 29 U.S.C. § 2615(a)(2), which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.' " *Id.* Here, Plaintiff alleges that Defendants both "[i]nterfer[ed] with [her] [e]xercise of FMLA [r]ights" (Count One) and "retaliate[ed] against [her] for exercising [her] rights under the FMLA" (Count Two). *See* Compl., p. 6-8, ECF No. 1.

I.    Plaintiff's FMLA Interference Claim (Count One) Fails as a Matter of Law

To make out an "interference" claim under the Family and Medical Leave Act, an employee must demonstrate that "(1) [s]he is entitled to an FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale*, 535 U.S. at 89). "The interpretive regulations of the FMLA state that '[i]nterfering with' the exercise of an employee's rights . . . includes . . . not only refusing to authorize FMLA leave, but discouraging an employee from using such leave [and] manipulation by a covered employer to avoid responsibilities under FMLA.' " *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 870 (D. Md. 2000) (quoting 29 C.F.R. § 825.220(b)). Harm or prejudice "exists where an employee [*inter alia*] loses compensation or benefits 'by reason of the violation,' 29 U.S.C. § 2617(a)(1)(A)(i)(I); or suffers some loss in employment status remediable through 'appropriate' equitable relief, 29 U.S.C. § 2617(a)(1)(B)." *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924 (4th Cir. 2007).

Here, Plaintiff contends that she was eligible for FMLA protections, that her employment with the City was covered by the FMLA, and that both she and her husband took FMLA leave for the birth of their child, beginning on January 15, 2015.  Mem. Supp. Pl.'s Mot., p. 2, 17-18, ECF No. 23-1.  Plaintiff claims that she developed a "serious health condition" following her pregnancy, which prompted her to request additional FMLA leave on March 17, 2015.  *Id.* at 19; March 17, 2015 Lopez Email, ECF No. 28-23.  She contends that, based on the Defendants' own calculations, she was entitled to additional FMLA leave at that time.  *Id.* at 19-20 (citing March 16, 2015 Fleming Email, ECF No. 28-22).  On March 16, 2015, Fleming indicated to Plaintiff that she was on track to have personally used 376 hours of FMLA leave by the end of the workday on March 25, 2015.  *Id.*  Fleming further indicated that, when combined with Plaintiff's husband's 100 hours of leave, Plaintiff's total FMLA leave usage would reach 476 hours on March 25, 2016, leaving less than a full day (four hours) of her guaranteed 12 weeks of leave remaining.  *Id.*  "Spouses who are eligible for FMLA leave and are employed by the same covered employer *may be limited to a combined total of 12 weeks of leave* during any 12–month period if the leave is taken for birth of the employee's son or daughter . . . ."  29 C.F.R. § 825.120 (emphasis added).

However, Plaintiff correctly notes that spouses are not limited to a combined total of 12 weeks of FMLA leave when the reason for their leave is a "serious health condition."  Mem. Supp. Pl.'s Mot., p. 20, ECF No. 23-1.  On the contrary, the same federal regulation cited *supra* explicitly provides the following:

> Where spouses both use a portion of the total 12–week FMLA leave entitlement for either the birth of a child, for placement for adoption or foster care, or to care for a parent, *the spouses would each be entitled to the difference between*

> *the amount he or she has taken individually and 12 weeks for FMLA leave for other purposes.* For example, if each spouse took six weeks of leave to care for a healthy, newborn child, *each could use an additional six weeks due to his or her own serious health condition* or to care for a child with a serious health condition. Note, too, that many state pregnancy disability laws specify a period of disability either before or after the birth of a child; such periods would also be considered FMLA leave for a serious health condition of the birth mother, and would not be subject to the combined limit.

29 C.F.R. § 825.120 (emphasis added). Accordingly, Plaintiff argues that she was actually entitled to another 104 hours of leave for her "serious medical condition" after March 25, 2015 [the difference between her guaranteed 480 FMLA leave hours and the 376 she had personally used up to that point]. Mem. Supp. Pl.'s Mot., p. 20-21, ECF No. 23-1. In addition, Plaintiff contends that she provided Defendants the requisite medical documentation to verify her serious health condition and sufficient notice of her intent to take FMLA leave. *Id.* at 21. However, Defendants denied Plaintiff's request for additional leave and terminated her employment when she was unable to resume work on March 26, 2015. Furthermore, Plaintiff contends that "[Chief] Sroka intentionally mislead the City Manager about Plaintiff's medical documentation, and then lied to Internal Affairs stating that Plaintiff did not provide medical documentation when every witness acknowledges that sufficient medical documentation was provided." *Id.* at 21-22. For these reasons, she claims that Defendants interfered with her exercise of FMLA rights as a matter of law.

Defendants concede that "Plaintiff was an eligible employee[7], that the City was covered by the FMLA[8], that up until a certain point Plaintiff was entitled to leave under the FMLA, and that Plaintiff gave her employer adequate notice of her intention to take FMLA leave." Mem. Supp. Defs.' Mot., p. 13, ECF No. 28-1.  However, Defendants contend that Plaintiff was not entitled to any additional FMLA leave for the period of March 26 – April 5, 2015 for her "serious health condition." *Id.* at 13-14.  On the contrary, they argue that "the City [had already given] Plaintiff more FMLA leave than she was entitled to, and more FMLA leave than the City was legally obligated to give her." *Id.* at 14.  Accordingly, the question before this Court is whether or not Plaintiff had a right to additional leave under the FMLA, beyond March 25, 2015, for her "serious health condition."

As discussed *supra*, Plaintiff initially requested FMLA leave for the birth of her child from January 20, 2015 through April 19, 2015.  *See* Leave Request Form, ECF No. 28-9. However, she subsequently informed the City that her pregnancy had been classified as "high risk" and that her doctor had ordered her to go on bed rest as of December 18, 2014. *See* December 18, 2014 Lopez Email, ECF No. 28-12; December 18, 2014 Dr. Jonathan Hodor Note, ECF No. 28-13.  Now, despite the fact that Plaintiff's leave from December 18, 2014 through January 14, 2015 [the day before her scheduled delivery date] was labeled

---

[7] An "eligible employee" is one "who has been employed . . . for at least 12 months by the employer with respect to whom leave is requested . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).  Plaintiff Lopez "was employed by the City of Gaithersburg on a full-time basis for more than three consecutive years prior to [her] request for FMLA leave" and "worked far in excess of 1,250 hours in the 12-months prior" to her FMLA leave request. Compl. at ¶¶ 3-4, ECF No. 1.

[8] The City of Gaithersburg was Plaintiff's "employer," as defined by 29 U.S.C. § 2611(4)(A)(iii).  Additionally, Sroka, the city's Chief of Police, is included under the Family and Medical Leave Act's definition of employer as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611.

as "sick leave," "annual leave," or "personal leave," as opposed to "FMLA" leave, *see* Time Detail, p. 19, ECF No. 28-8, and despite Fleming's indication to Plaintiff in March of 2015 that her FMLA leave began on January 15, *see* March 16, 2015 Fleming Email, ECF No. 28-22, Defendants contend that Plaintiff's pre-delivery "bed rest" leave from December 18, 2014 through January 14, 2015 was in fact "FMLA" leave and counts against her guaranteed 12 weeks of FMLA leave. *See* Mem. Supp. Defs.' Mot., p. 19, ECF No. 28-1. Accordingly, they contend that Plaintiff received a total of 560 hours of leave through March 25, 2015. *Id.* at 19, 23; Lopez Leave Usage, ECF No. 36-2; Time Detail, p. 20-25, ECF No. 28-8. Defendants claim that the timesheet entries designating Plaintiff's "bed rest" leave as "sick leave," "annual leave," or "personal leave" were "administrative error[s]" and that Fleming's March 16 email to Plaintiff was a mistake, based on the erroneous designations. *Id.* at 18-19. Plaintiff argues that no "administrative error" occurred. Pl.'s Reply, p. 5, ECF No. 33. Rather, she objects that Defendants are now turning their back on an "active policy" they had in place at the time of her leave, which "permit[ted] employees to take all their available paid leave before using FMLA leave." *Id.*

In *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), the United States Supreme Court invalidated 29 C.F.R. § 825.700(a), a federal regulation providing that "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." *See Ragsdale*, 535 U.S. at 96. The Court observed that requiring an employer to grant additional leave *even when no prejudice results from a lack of notice* "amends the FMLA's most fundamental substantive guarantee-the employee's entitlement to 'a total of 12 workweeks of leave in any

12-month period.' " *Ragsdale*, 535 U.S at 93 (quoting 29 U.S.C. § 2612(a)(1)).  "Accordingly,

under *Ragsdale*, courts no longer grant plaintiffs raising FMLA interference claims additional

leave simply because their employers may have failed to designate prior leave as "FMLA"

leave.  Rather, courts must undertake a 'fact-specific inquiry into what steps the employee

would have taken had the employer given the required notice.' " *Moticka v. Weck Closure Sys.*,

183 F. App'x 343, 350–51 (4th Cir. 2006) (quoting *Ragsdale*, 535 U.S. at 91).

The plaintiff in *Ragsdale* had received over 30 weeks of leave from her employer, but

sought an additional 12 weeks of leave because her employer had failed to designate any of

her prior leave as "FMLA leave."  *Ragsdale*, 535 U.S. at 84-85.  The Supreme Court

concluded that she was not entitled to 12 additional weeks of leave, reasoning as follows:

> Ragsdale ha[d] not shown that she would have taken less leave or intermittent
> leave if she had received the required notice . . . .  In fact, her physician did not
> clear her to work until December, long after her 30-week leave period had
> ended.  Even if Wolverine [her employer] had complied with the notice
> regulations, Ragsdale still would have taken the entire 30-week absence.
> *Id.* at 90.

The United States Court of Appeals for the Fourth Circuit considered a similar issue

in *Moticka v. Weck Closure Sys.*, 183 F. App'x 343, 350–51 (4th Cir. 2006) (per curiam).  Like

the plaintiff in *Ragsdale*, the *Moticka* plaintiff had received thirty-four weeks of leave from her

employer for surgery, but argued that she was entitled to additional leave because her

employer had failed to provide "individualized notice that her FMLA leave was being

expended during her time off."  *Moticka*, 183 F. App'x at 349-350.  Citing *Ragsdale*, the

Fourth Circuit observed that "[b]efore liability will be imposed on an employer for violating

an employee's rights under the FMLA, the employee must show that she was *prejudiced* by the violation." *Id.* at 347 (emphasis added).  The Court found that Moticka was not prejudiced:

> [T]he record is bereft of any evidence to suggest that Moticka's recovery from her first surgery could have been expedited had she known she was expending her FMLA leave. Rather, based on Moticka's and Dr. Dougherty's representations, it appears that Moticka needed the many months she requested to recover from her first surgery . . . As of December 2000, Moticka had expended all of her FMLA leave and all but six weeks of her short-term disability leave. Not until January 26, 2001, when she underwent surgery on her right foot, can we infer that her left foot was sufficiently healed to permit her to return to work. At that time, Moticka had expended her full entitlement to short-term disability and FMLA leave. "Even if [Weck] had complied with the notice regulations, [Moticka] still would have taken" her full twenty-six combined weeks of FMLA and short-term disability leave. *Ragsdale*, 535 U.S. at 90.  Accordingly, Moticka, like the plaintiff in *Ragsdale*, has failed to show prejudice.

*Id.* at 350–51.  Even with notice that her employer was counting her initial period of leave against her 12-week FMLA allotment, Moticka would have been medically unable to return to work prior to the expiration of her 12 weeks of FMLA leave.  Accordingly, the Court held that Moticka's employer had not violated her rights under the FMLA and affirmed summary judgment for her employer.  *Id.* at 349-351.

The Fourth Circuit has recently considered yet another FMLA case, *Vannoy v. Federal Reserve Bank of Richmond*, ---F.3d---, No. 14-2375, 2016 WL 3536656 (4th Cir. June 28, 2016), a case involving both FMLA interference and retaliation claims.  *Vannoy*, 2016 WL 3536656 at *1.  The plaintiff in *Vannoy* had taken FMLA leave from work for medical treatment, but returned sooner than expected due to his fear that his employer might give away his position to someone else.  *Id.* at 3-5.  With respect to the plaintiff's FMLA interference claim, the Fourth Circuit found that plaintiff's employer had committed an FMLA "rights and

responsibilities" "notice violation" because his employer had "failed to inform Vannoy of his right to job restoration at the conclusion of his medical leave term." *Id.* at 4.  The Court observed the following:

> The FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA.  *See* 29 C.F.R. § 825.300.3.  There are two types of individualized notice that the employer must give an employee who may be entitled to FMLA leave: a "rights and responsibilities notice," *id.* § 825.300(c); and a "designation notice[9]," *id.* § 825.300(d).  *Id.* at 3.

However, the Court also noted that "if a notice violation occur[s], the 'FMLA's comprehensive remedial mechanism' grants no relief absent a showing that the violation *prejudiced*" the plaintiff.  *Id.* (quoting *Ragsdale*, 535 U.S. at 89) (emphasis added).  "An FMLA notice violation can be an actionable interference claim for which an employee may recover, so long as he makes a showing of prejudice flowing from the violation." *Id.* at 4.  The Fourth Circuit explained that "[p]rejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Id.* at 5 (*c.f. Dorsey v. Jacobson Holman, PLLC*, 476 F. Appx. 861, 862 (D.C. Cir. 2012) (concluding plaintiff could not show prejudice where she "never returned to work" and "provides no record evidence whatsoever that she could have structured her leave differently")).  Ultimately, the Fourth Circuit held that summary judgment would not be awarded for either party on plaintiff's FMLA interference claim

---

[9] Under 29 C.F.R. § 825.300(d), "[w]hen [an] employer has enough information to determine whether . . . leave is being taken for a FMLA–qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be *designated* and will be counted as FMLA leave within five business days absent extenuating circumstances." (emphasis added).

because a genuine issue of material fact remained as to whether the plaintiff "would have structured his leave differently had he known that his job was protected." *Id.* at 5-6.

Here, although Lopez does not explicitly style her claim as such, she objects that Defendants never provided her "designation notice" that her pre-delivery "bed rest" leave from December 18, 2014 through January 14, 2015 would be counted against her FMLA leave allotment. However, like the plaintiffs in *Ragsdale* and *Moticka*, Lopez was ultimately allowed significantly more leave time than the 12 week "substantive floor" guaranteed by the FMLA. In fact, from December 18, 2014 through her termination on March 26, 2015, Plaintiff used a total of 560 leave hours. *See* Defs.' Reply, p. 16, n. 4, ECF No. 36; Lopez Leave Usage, ECF No. 36-2; Time Detail, p. 20-25, ECF No. 28-8. [10]

Plaintiff argues that *Ragsdale* and its progeny are not applicable to this case because the City's initial failure to designate her pre-delivery "bed rest" leave as FMLA leave was not a "single mistake" or "administrative error," but part of an "active policy . . . permitting her to take paid leave before going on FMLA leave." Pl.'s Reply, p. 5, ECF No. 33. Although Defendants designated Plaintiff's leave from December 18, 2014 through January 14, 2015 as "sick leave," "annual leave," or "personal leave" on their internal records, they have subsequently indicated that her leave during that period was FMLA qualifying leave, was designated as such and, accordingly, counts against her FMLA leave allotment. The parties dispute whether a notice violation, like the violation in *Vannoy*, actually occurred. As

---

[10] Additionally, Plaintiff objects that "Defendants cannot, after confirming the amount of leave available to [her], now claim that [her] use of workers' compensation time [for an on-duty injury in early 2014] counts against her FMLA leave." Mem. Supp. Pl.'s Mot., p. 9, ECF No. 23-1. However, Defendants do not "assert that Plaintiff's workers' compensation leave was counted against [her] FMLA allotment." Defs.' Mot., p. 43, ECF No. 28-1. Rather, as discussed herein, Defendants allege that Plaintiff's leave from December 18, 2014 through January 14, 2015, prior to the birth of her child, counts against her FMLA allotment. *Id.* at 18-19.

discussed *infra*, a genuine issue of material fact remains as to whether or not Defendants had an active policy in place that would have led Lopez to believe that her pre-delivery leave would not be designated as FMLA leave.   However, regardless of whether Plaintiff actually received notice, she cannot prevail on her interference claim because she cannot demonstrate that she was *prejudiced* by the alleged notice violation.  *See supra Vannoy*, 2016 WL 3536656 at 4.

Like the plaintiffs in *Ragsdale* and *Moticka*, Plaintiff cannot demonstrate that she was prejudiced by Defendants' initial failure to designate her leave as "FMLA" leave.  Even if Lopez's pre-delivery "bed rest" leave from December 18, 2014 through January 14, 2015 had been clearly labeled as FMLA leave and she raised no objection to that designation or her lack of notice, she would have been medically unable to return to work 12 weeks later, in March of 2015.  It is undisputed that Plaintiff's "serious medical condition" prevented her from returning to work until April 6, 2015.  *See* Jefferson Note, ECF No. 28-25 ("The patient . . . may return to work on 04/06/2015.").  Plaintiff requested additional leave in March of 2015 specifically for this reason.  Accordingly, unlike the plaintiff in *Vannoy*, Lopez cannot demonstrate that there was any way she could have "structured [her] leave differently had [s]he known" that Defendants were designating her pre-delivery leave as FMLA leave.

Furthermore, she has cited no authority[11] indicating that she is excused from demonstrating prejudice because Defendants' failure to initially designate her FMLA-qualifying pre-delivery leave as "FMLA" leave was due to an alleged "active policy" as opposed to a mistake.[12]  For these reasons, Plaintiff's FMLA interference claim (Count One) fails as a matter of law. Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 23) is DENIED as to Count One, and Defendants' Cross Motion for Summary Judgment (ECF No. 28) is GRANTED as to Count One.[13]

II.  <u>A Genuine Issue of Material Fact Remains as to Liability on Plaintiff's FMLA Retaliation Claim (Count Two)</u>

"An FMLA plaintiff claiming retaliation 'must first make a *prima facie* showing that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.' "  *Vannoy*, 2016

---

[11] The parties in *Motika* also disputed "whether, under [the employer's] policy, FMLA and short-term disability leave run concurrently or consecutively."  *Motika*, 183 F. App'x at 348.  However, the Fourth Circuit did not decide that question or its effect on the Court's analysis of plaintiff's FMLA interference claim.  *Id.* at 349, n. 6.  Additionally, the United States Court of Appeals for the Sixth Circuit held in *Lafata v. Church of Christ Home for the Aged*, 325 F. App'x 416 (6th Cir. 2009) that an employee was still entitled to the protections of the FMLA after more than 12 weeks of leave where her employer "applied its individual leave policy, under which Defendant did not count leave taken pursuant to the alternative leave policy of providing one year of paid disability leave against the employee's FMLA entitlement."  *Lafata*, 325 F. App'x at 421.  However, the employer defendant in *Lafata* had "actively avoided designating Plaintiff's leave as FMLA leave, . . . refused to provide the required FMLA forms to Plaintiff for her disability leave" " [d]espite [her] repeated requests for FMLA forms," "failed to notify Plaintiff of her rights and obligations with respect to FMLA leave, . . . [and] affirmatively designated a later [twelve-week] period . . . as FMLA leave."  *Id.* at 421.

[12] As discussed *infra*, a factual finding that Defendants have an "active policy" in place that would have benefitted Plaintiff, but are not enforcing it here, would support Plaintiff's FMLA retaliation claim (Count Two).

[13] Plaintiff separately argues that Defendants are estopped from denying her additional FMLA leave past March 25, 2015 because they had previously represented that her FMLA leave did not start until January 15, 2015 and, accordingly, would still be available through April of 2015.  "The Fourth Circuit has not yet applied equitable estoppel in the context of FMLA eligibility."  *Schmidt v. Town of Cheverly*, No. GJH-13-3282, 2014 WL 4799039, at *6 (D. Md. Sept. 25, 2014).  However, even if estoppel is applicable in this context, Plaintiff's failure to demonstrate prejudice forecloses her estoppel argument.  This Court has previously held in *Schmidt v. Town of Cheverly* that the estoppel doctrine did not apply in the FMLA context where an employee's medical condition prevented him from detrimentally relying on his employer's statements.  *Id.* at *7 ("the evidence presented indicates that Officer Schmidt could not have returned to work regardless of whether he knew that he was eligible for FMLA leave.").

WL 3536656 at *7. "Retaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams*, 789 F.3d at 429 (quotations omitted). Accordingly, "they may rest on circumstantial evidence evaluated under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Vannoy*, 2016 WL 3536656, at *7. "Once the plaintiff proffers evidence establishing his *prima facie* case, and the employer offers a non-retaliatory reason [for] the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" *Id.*

As discussed *supra*, the United States Court of Appeals for the Fourth Circuit recently considered an FMLA retaliation claim in *Vannoy v. Fed. Reserve Bank of Richmond*, ---F.3d---, No. 14-2375, 2016 WL 3536656, at *7 (4th Cir. June 28, 2016). "Vannoy contend[ed] that [his employer] terminated him in retaliation for taking FMLA-qualifying absences. He argue[d] that once [his employer] became aware of the extent of his illness and his ongoing need for intermittent FMLA leave," he was terminated. *Vannoy*, 2016 WL 3536656 at *6. The Fourth Circuit assumed without deciding that Vannoy could establish a *prima facie* case for FMLA retaliation. *Id.* at *7. However, the Court ultimately held that he could not prevail on his retaliation claim "because FRBR ha[d] proffered overwhelming evidence that it terminated Vannoy because of his misconduct, about which there [we]re no material factual disputes, and the record contain[ed] *no evidence remotely suggestive of pretext*." *Id.* (emphasis added). Accordingly, the Court held that summary judgment for the Defendant was warranted. *Id.*

Here, Plaintiff has stated a *prima facie* case of FMLA retaliation. First, she has alleged that she "engaged in protected activity by taking FMLA leave" and that "Defendants

terminated [her] when [she] refused to disregard her doctor's orders and return to work despite her serious health condition."  Mem. Supp. Pl.'s Mot., p. 22, ECF No. 23-1. Additionally, she claims that "[t]here is a causal connection between the two as the stated reason for [her] termination was that she failed to return to work when ordered, despite the availability of leave and her doctor's orders."  *Id.*  Pursuant to the *McDonnell-Douglas* burden-shifting scheme, Defendants have offered a non-retaliatory explanation for Plaintiff's termination.  They contend that Plaintiff was fired not because she had taken FMLA leave, but "because her FMLA leave had expired and she indicated that she would not be returning to work despite being ordered to do so, and because Plaintiff did not provide medical certification that she was fit to return to work on March 26, 2015."  Mem. Supp. Defs.' Mot., p. 31, ECF No. 28-1.  However, unlike in *Vannoy* where there was "no evidence remotely suggestive of pretext," Plaintiff has proffered evidence in rebuttal that raises a genuine issue of material fact as to whether this explanation is pretext.

As discussed *supra*, Plaintiff alleges that she has been denied the benefit of Defendants' "active policy to permit employees to take all available paid leave prior to utilizing FMLA leave."  Pl.'s Reply, p. 2, ECF No. 33.  While Defendants initially informed Plaintiff that her FMLA leave did not begin until January 15, 2015, they have subsequently characterized her "other leave" from December 18, 2014 through January 14, 2015 as FMLA leave, justifying Plaintiff's March 26, 2015 termination on the grounds that her FMLA leave had "expired."  Plaintiff contends that, if Defendants had applied their "active policy" to her leave, she would have been entitled to additional FMLA leave time beyond March 26.

This Court has recognized that FMLA retaliation occurs where an employee is disciplined more harshly than other employees because she attempted to invoke her FMLA rights. *See Edusei v. Adventist HealthCare, Inc.*, No. DKC-13-0157, 2014 U.S. Dist. LEXIS 91956, at *22 (D. Md. July 7, 2014). Additionally, other courts have specifically held that an employer's violation of its own policy, combined with other circumstantial evidence, can constitute FMLA retaliation. *See Norman v. Southern Guarantee Insurance Co.*, 191 F. Supp. 2d 1321 (M.D. Ala. 2002) (employer's failure to uniformly apply an absentee policy, which employer used to justify terminating the plaintiff's employment, created a triable issue of fact concerning FMLA retaliation); *Salas v. 3M Co.*, No. 08 C 1614, 2009 WL 2704580 (N.D. Ill. Aug. 25, 2009) (employer's decision to terminate plaintiff's employment while the deadline to appeal her denial for FMLA leave had not expired, in violation of its own policy to refrain from doing so, created a triable issue of fact concerning FMLA retaliation).

Here, a genuine issue of material fact remains as to (1) whether the City has an "active policy" to permit employees to take all available paid leave prior to utilizing FMLA leave and (2) whether that policy has been uniformly applied. Lopez has stated that at a 2014 meeting regarding her FMLA leave, she and Sarah Fleming "discussed not starting [Lopez's leave] until [she] had used all of [her] leave, annual, sick, donated." Lopez Dep., p. 65, ECF No. 28-6. According to Lopez, Fleming "said that that was fine." *Id.* Additionally, after Lopez took her pre-delivery "bed rest" leave in December of 2014, Fleming explicitly asked Lopez "if [she] intend[ed] to use FMLA to cover this time," suggesting that she had an option. December 31, 2014 Fleming Email, ECF No. 28-18. On the City's payroll records, Lopez's leave from December 18, 2014 through January 14, 2014 [the day before her

scheduled delivery date] was labeled as "sick leave," "annual leave," or "personal leave," whereas leave after that date was labeled "FMLA" leave. Time Detail, p. 19, ECF No. 28-8. Additionally, Fleming indicated to Lopez in March of 2015 that her FMLA leave had begun on January 15, 2015. *See* March 16, 2015 Fleming Email, ECF No. 28-22. At a subsequent deposition, Fleming again stated that Lopez's FMLA leave "officially" began on "January 15th." Fleming Dep., p. 11, ECF No. 23-7. Furthermore, when asked "[i]f someone has paid leave available, are they allowed to use the paid leave before going on FMLA?" Fleming responded, "[y]es." *Id.* at 9-10. When asked the same question at her own deposition, Kimberly Yocklin, the City's Human Resources Director, also responded "[y]es." Yocklin Dep., p. 21, ECF No. 33-2.[14]

Defendants maintain it has never been their "active policy to permit employees to take all available paid leave prior to utilizing FMLA leave." Defs.' Reply, p. 2, ECF No. 36. They acknowledge that their policies permit City employees "to have their FMLA leave be paid, unpaid, or a combination of both," and that "Plaintiff specifically requested to have her FMLA leave be paid and have her paid leave run concurrently wither her unpaid leave, pursuant to 29 C.F.R. § 825.207(a)[15]." *Id.* However, both Fleming and Yocklin have indicated not only that employees could "have their FMLA leave be paid," but that they could "use the paid leave *before going on FMLA*." Defendants argue only that these

---

[14] Yocklin has since stated, in an affidavit dated February 23, 2016, that "it has never been the active policy [of the City] to permit and/or require City . . . employees to exhaust all paid leave prior to utilizing any Family and Medical Leave. Yocklin Aff., ¶ 3, ECF No. 36-10.

[15] The Family and Medical Leave Act "permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave. The term substitute means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave . . . ." 29 C.F.R. § 825.207(a).

statements are "incorrect" and object that "Plaintiff provides no facts regarding any other employees who were permitted to exhaust all of their accrued paid leave prior to utilizing their FMLA leave, nor does the City's Manual regarding leave contain any policies stating that employees may choose to do the same." *Id.* at 7.

Additionally, a genuine issue of material fact remains as to whether or not Chief Sroka misrepresented Lopez's actions in order to have her terminated.   Although City Manager Tony Tomasello ultimately issued Lopez's termination letter on March 26, 2015, Chief Sroka had submitted a memorandum to Tomasello on March 23, 2015, recommending Lopez's termination.   *See* Sroka Dep., p. 92, ECF No. 23-4.   In that memorandum, Chief Sroka indicated that "Office Lopez does not intend to return to work after the end of the FMLA period, has provided inconsistent dates of her planned return to work, and has not provided a firm return to full duty date nor has medical documentation been provided that she will be able to perform the essential job functions of her position."   March 23, 2015 Sroka Mem., ECF No. 23-12.   However, Lopez had submitted medical documentation to the City on March 23, 2015.   The note was signed by a nurse practitioner and stated that "[t]he patient work status is light work/activity and will return to work on 04/06/2015 due to excessive bleeding after high risk pregnancy.   They may resume regular work/activity on May 6, 2015."   Jefferson Note, ECF No. 23-11.   When asked at his deposition if he had "seen this doctor's note . . . prior to drafting [the] memo," Chief Sroka responded "[y]es." Sroka Dep., p. 89, ECF No. 23-4.   Subsequently, he initiated an internal affairs investigation into Lopez's insubordination, also based on her alleged failure to "provide proper medical documentation as required by City policy."   March 26, 2015 Sroka Mem., ECF No. 23-13.

Defendants maintain that Chief Sroka "[d]id [n]ot [m]isstate the [t]ruth [i]n [o]rder to [t]erminate Plaintiff." Defs.' Reply, p. 16, ECF No. 36. On the contrary, they contend that the doctor's note Plaintiff submitted on March 23, 2016 was in fact insufficient "medical documentation . . . that she w[ould] be able to perform the essential job functions of her position" under the City's personnel regulations. *Id.* at 17. The City's regulations require that "[f]or family or medical leave due to the employee's own serious medical condition . . . the employee is required to provide a written certification by his/her personal health care provider of fitness to return to work . . . [which] must indicate any restrictions of the employee's ability to perform the essential functions of his/her position and specifically address the employee's ability to perform the essential functions of his/her job." City Personnel Rules & Regulations Manual, p. 700-13, ECF No. 28-3. However, the note Plaintiff submitted was signed by a Certified Registered Nurse Practitioner and clearly stated that Plaintiff could "resume regular work/activity on May 6, 2015." Accordingly, a genuine issue of material fact remains as to whether or not Lopez had satisfied the City's requirements and, accordingly, whether or not Chief Sroka misstated the facts in his memorandum to Tomasello. [16] For these reasons, a genuine issue of material fact remains as to liability on Plaintiff's FMLA retaliation claim (Count Two). Accordingly, Plaintiff's Motion for Summary Judgment (ECF No. 23) is DENIED as to Count Two, and

---

[16] Furthermore, Plaintiff's request to return to work on light duty status on April 6, 2015 was denied, despite the fact that light duty work was available. In a March 24, 2015 email to Lieutenant Pettaway, Officer John Breck indicated that "[i]f a light duty determination is granted there are [] several things that I could use help with." March 24, 2015 Breck Email, ECF No. 23-14. Additionally, Sergeant Pettaway stated in his deposition testimony that "[l]ight duty's always available" and that he didn't "have any knowledge of anyone ever being denied light duty." Pettaway Dep., p. 22, ECF No. 23-15.

Defendants' Cross Motion for Summary Judgment (ECF No. 28) is also DENIED as to Count Two.  Therefore, this case will proceed to trial on Count Two of the Complaint.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 23) is DENIED and Defendants' Cross Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART.  Specifically, Judgment is entered for the Defendants as to liability on Count One of the Complaint, Plaintiff's FMLA interference claim, but a genuine issue of material fact remains as to liability on Count Two of the Complaint, Plaintiff's FMLA retaliation claim.  Accordingly, this case will proceed to trial on Count Two alone.

A separate Order follows.

Dated: August 3rd, 2016                         ____/s/_____
                                                Richard D. Bennett
                                                United States District Judge